THE STATE OF NORTH DAKOTA, EX REL. THE CITY OF MINOT, A MUNICIPAL CORPORATION; SAM CLARK AND GEORGE L. MORROW, RESIDENTS AND TAXPAYERS OF THE CITY OF MINOT, v. C. C. C. WILLIS, A. J. DELANCE, RALPH ABBOTT, S. H. ELLIOTT, R. H. EMERSON, AS THE BOARD OF COUNTY COMMISSIONERS WITHIN AND FOR WARD COUNTY, NORTH DAKOTA.

Opinion filed November 19, 1908.

Appeal from District Court, Ward county; *Goss, J.*

Action by the State, on the relation of City of Minot and others. Judgment for defendant, and plaintiffs appeal.

Affirmed.

*Robert H. Bosard,* for appellants. *George A. McGee* and *James Johnson,* for respondents.

(118 N. W. 823.)

———————

Opinion filed November 19, 1908.

**Municipal Corporations — Segregation of Territory — Estoppel — Acquiescence.**

Under the facts stated in the opinion, *held,* that the city of Minot is estopped by its long acquiescence from questioning the validity of the method adopted by the council in attempting to segregate certain territory from its corporate limits.

Appeal from District Court, Ward county; *Goss, J.*

Action by the State, on the relation of the City of Minot and others, against C. C. C. Willis and others, county commissioners. Judgment for defendants, and plaintiffs appeal.

Affirmed.

*Robert H. Bosard,* for appellants. *George A. McGee* and *James Johnson,* for respondents.

FISK, J. This is an appeal from a judgment of the district court of Ward county quashing and dismissing an alternative writ of mandamus theretofore issued on application of appellants. It was sought by the writ to compel defendants, as members of the board of county commissioners of Ward county, to reconvene as a board of equalization, and to equalize the assessments of certain real and personal property claimed to be included within the corporate limits of the city of Minot. Whether such property is thus included within such corporate limits is the real controversy between the parties. It seems to be conceded by counsel that the remedy adopted is a proper one. As to this we entertain grave doubts. The territory in dispute having, at least by color of authority, been segregated from the city limits, it would seem that the validity of such act of segregation could be questioned only by a direct attack, and not collaterally, as is attempted to be done in this proceeding. 20 Am. & Eng. Encyc. of Law (2d Ed.) 1155, and cases cited. Furthermore, the writ of mandamus will not issue unless the relator has a clear legal right to the performance of the particular act of which performance is sought to be compelled. A right which is in substantial dispute or regarding which a substantial doubt exists will not be enforced by mandamus. 25 Cyc. 151-153, and cases cited. But, if we disregard these questions of practice, and consider only the merits, we are entirely clear that the conclusion reached by the trial court is sound and hence the judgment must be affirmed.

The facts which are undisputed, and which were found by the trial court, are as follows:

(1) That the city of Minot, as originally incorporated, consisted of all of sections 13, 14, 23 and 24.

(2) That thereafter, and on or about the 15th day of April, 1890, pursuant to the provisions of sections 1115, 1116, Comp. Laws 1887 (Pol. Code), a petition signed by not less than three-fourths of the legal voters and by the owners of not less than three-fourths in value of the property was duly presented to the city council of the city of Minot, praying that the real estate hereinbefore described be set apart from the City of Minot, and a notice of the

presentment of such petition was duly given by the petitioners by publication once each week for two successive weeks in the official paper, and that thereafter, on the 5th day of May, 1890, at a meeting of the city council of the City of Minot, the following proceedings were had upon said petition, as appears in page 54 of Book A of the Council Proceedings: "On motion of Alderman Field, seconded by Alderman Seiver, C. E. Gregory was employed to give his advice in regard to letting section fourteen out of the city limits." That thereafter, and on the 10th day of May, 1890, the following proceedings were had upon said petition as appears on page 55 of Book A of the Council Proceedings: "On motion and upon the call of the yeas and nays, the petition of settlers of section 14, 155, range 83, to be set apart from the city of Minot, was granted, and the city auditor instructed to draw a plat of said section and township, and file the same with the register of deeds."

(3) That in the year 1903 Ehr's addition to the city of Minot, which is located on said section 14, was assessed by the city of Minot and the taxes were paid. That in the years 1904 and 1906 Ehr's addition to the city of Minot was assessed by the city of Minot, but was stricken off from the tax books of the city of Minot by the county commissioners. That in the years 1907 and 1908 all of said section 14 was assessed by the city of Minot, but said section 14 was stricken off from the assessment list of the city of Minot by the board of county commissioners.

(4) That the south half of said section 14 now consists of the platted additions of North Minot, West Minot and Ehr's addition.

From these facts the trial court found as conclusions of law that the territory in question was disconnected and excluded from the corporate limits of Minot on May 10, 1890, and ever since has remained disconnected therefrom; also, that from such date to 1907 the said city has asquiesced in such disconnection and exclusion, and is now estopped to question the validity thereof. Appellants' assignment of errors presents three questions for determination. It is contended "(1) that the city could not disconnect or exclude this territory except by ordinance; (2) that estoppel by reason of acquiescence is not available as a defense between the parties to this action; and (3) that a municipality cannot be estopped by acquiescence arising from mere nonaction on the part of its officers or agents in matters in which public interests are concerned."

Upon the first proposition but little need be said. The statute in force at the date of the attempted exclusion of the territory from the city limits (sections 1114 to 1119 of the Compiled Laws of the late territory of Dakota of 1887) no doubt contemplated that the act of segregating territory from a city should be by ordinance, and there is no doubt that such act was legislative in character. Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023. Whether it can be said that the motion which was carried by the city council was the equivalent of, and in effect, an ordinance within the meaning of said statute, we do not determine, as we choose to place our decision in this case upon the broad principle of acquiescence and estoppel resting upon the ground of public policy.

This brings us, therefore, to appellants' second and third contentions, which may be considered together. It is asserted by appellants' counsel that the doctrine of acquiescence and estoppel is not applicable to the facts, for the reason "that, in order for any litigant to be estopped, he must, either by act or silence, have done or omitted to do something in reliance upon which the party seeking to invoke the doctrine has changed his position"—citing 11 Am. & Eng. Encyc. of Law (2d. Ed.) 387. Counsel then proceeds to argue that, under the facts, the county commissioners have not relied upon such alleged asquiescence by the city in the exclusion of said territory and have in no manner suffered any loss by reason thereof, and further that they have been responsible therefor; the contention being that any omissions of this property from the tax lists of the city were caused by the county auditor, and that each year, with the exception of 1903, in which this property was assessed by the city assessor, the county commissioners struck the same from the assessment books of the city. Granting the latter facts to be true, and they no doubt are true, does it necessarily follow that appellants' conclusion is sound? We think not. During all this time from May 10, 1890, until 1907, the city seemingly acquiesced in everything which was done, not only by the county, but by the township of Harrison, in recognition of the latter's claim to the territory in dispute, excepting the attempt in certain of the latter years to tax said property as a portion of the taxable property within the city. During all the years from 1893 to 1908, inclusive, said territory was assessed for taxation by Harrison township, and was in all respects treated as a portion of said township. For about 13 years after the city council attempted to

and supposed it had segregated said territory from the limits of the city no attempt was made by it to tax said property. It is apparent that for a period of 10 years after the attempted segregation of this territory every one assumed and acted on the assumption that the method pursued for the setting off of said property from the city limits was valid, and that said territory became and was a part of Harrison township. It is therefore fair to presume that during all such time the residents of this territory exercised no rights either as electors or otherwise of the city of Minot and took no part in its municipal affairs, but that they did, on the other hand, vote, and participate, in the affairs of the township. It is also fair to presume that public improvements have been or may have been made in such territory and paid for out of county or township funds. Children residing in this territory have no doubt been excluded from free access to the city schools, and no doubt other rights may have been lost either by the county or township or both. and by their inhabitants in reliance upon the assumption, acquiesced in by the city, that said territory was on May 10, 1890, segregated from the city and became annexed to Harrison township. Under this state of facts we are firmly convinced that the trial court did not err in its conclusion that the city of Minot by this long acquiesence is now estopped to claim that said territory was not legally segregated from its corporate limits. Indeed, it would be a reproach upon the law to hold, in view of these facts, that the city is not thus estopped. Public policy demands that the doctrine of estoppel should be invoked in such a case. In this conclusion we are amply supported by authority. 28 Cyc. 214, and cases cited. We quote from the text as follows: "Taxpayers or inhabitants may be estopped to question the validity of annexation or detachment of territory to or from a municipal corporation, as by acquiescence in the annexation or delay in attacking the same, or by failure to exercise the rights of contravention and appeal given them by statute. So also a municipality may be estopped." This identical question was before the Supreme Court of Illinois in People v. Maxon, 139 Ill. 306, 28 N. E. 1074, 16 L. R. A. 178. There certain lands were attempted to be disconnected from a village by ordinance, but the ordinance was invalid. For seven years the village exercised no jurisdiction over such land, and the voters residing on the land exercised no rights in the village government. After the attempted segregation from the city and the attachment

of the land to the adjoining township, certain public improvements were made thereon by the township. Under these facts it was held that the village was estopped from claiming the right to tax such land. A leading case upon the question here involved is that of State v. Des Moines, 96 Iowa, 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381. In that case territory had been annexed to the city under an unconstitutional statute, but it was held that after four years relator was estopped to question the validity of such annexation. See to the same effect, 20 Am. & Eng. Encyc. of Law (2d Ed.) 1155, and the following cases cited therein: Logansport v. La Rose, 99 Ind. 117; Strosser v. Ft. Wayne, 100 Ind. 443 Sherry v. Gilmore, 58 Wis. 324, 17 N. W. 252.

But it is contended by appellants' counsel that nonaction by officers of a municipality in matters pertaining to its governmental, as contradistinguished from its private capacity, is insufficient upon which to predicate an estoppel. This statement may be conceded to be sound as an abstract proposition, but it is not applicable to the facts in the case at bar. Here there was something more than mere nonaction by officers of the municipality. In the first place, there was affirmative action by the legislative department of the city attempting in good faith to segregate said property from the corporate limits; and, in the second place, for over 10 years thereafter every one assumed that such action was valid and in reliance thereon the residents of said territory were in all respects treated as residents of Harrison trwnship, and this, with the full acquiescence of the citizens and officers of said city. These and other facts heretofore mentioned serve to bring the case squarely within the rule recognized by the foregoing authorities, and at the same time differentiates it from the cases cited by appellants' counsel.

Judgment affirmed. All concur.