# STATE EX REL. KNUDT HERBRANDSON, Appellant, v. E. H. L. VESPERMAN et al., Respondents.

(204 N. W. 202.)

**Mandamus — may be used to compel officers to perform legal duty but not to control their discretion.**

1. In a proceeding for a writ of mandamus to compel the commissioners of the city of Bismarck to rent the city auditorium to the relator, it appears from the return that the commissioners refused to let the building for a public meeting for the reason that they had information which led them to believe that the meeting contemplated "was calculated to create and arouse religious and racial prejudice, ill will and strife . . . and . . . that it would prove inimical to the good will, harmony and good order existing in the city;" no attempt or offer was made by the relator, to show that the discretion to refuse to rent the auditorium was not exercised in a good faith belief in the truth of this information and that to rent the building would tend to bring about the undesirable results anticipated and set forth in the return. It is *held:*

That official discretion cannot be controlled by mandamus. Resort may be had to that remedy in order to compel officers to perform a legal duty; but where the performance of the legal duty involves the exercise of judgment or discretion, such judgment or discretion cannot be controlled or the exercise thereof compelled in a particular manner.

**Municipal corporations — commissioners have discretion in leasing auditorium.**

2. That the city commissioners have a discretion as to whether and on what terms and for what purposes the city auditorium shall be rented.

**Mandamus — in absence of showing of abuse of discretion, trial court properly refused mandamus.**

3. That in the absence of any facts and circumstances whatever, showing or tending to show that the discretion was arbitrarily and unreasonably exercised, the trial court properly refused to issue the writ of mandamus.

**Municipal corporations — limits of discretion of commissioners not defined.**

4. The limits of the discretion of the commission in leasing or refusing to lease the auditorium are not defined.

Opinion filed May 2, 1925. Rehearing denied May 25, 1925.

Mandamus, 38 C. J. § 69 p. 590 n. 37; § 71 p. 593 n. 49; p. 594 n. 50; § 74 p. 599 n. 71. Municipal Corporations, 28 Cyc. p. 922 n. 41, 47.

Note.—Mandamus to review official discretion, see 18 R. C L. 124; 3 R. C. L. Supp. 786; 4 R. C. L. Supp. 1178; 5 R. C. L. Supp. 974.

52 N. D.—41.

Appeal from District Court, Burleigh County, quashing an alternative writ of mandamus and dismissing the action, *Jansonius, J.*

Affirmed.

*F. O. Hellstrom,* for appellant.

*C. L. Young,* for respondents.

JOHNSON, J. This is a mandamus proceeding wherein the relator seeks to compel the respondents to permit the use of an auditorium owned by the city of Bismarck for a public meeting, at which a lecture or lectures are to be given. Vesperman is manager of the auditorium, and the other respondents are the city commissioners of Bismarck. The auditorium was built by the city, paid for out of public funds, and has been commonly used for public meetings of various kinds. The city commission adopted a schedule of rentals several years ago and has exercised control over the building as over other property owned by the city. No governmental activities are performed in the auditorium; and it houses none of the city officials or employees.

On or about the 21st of January, 1925, the relator applied to the respondents for permission to use the auditorium for a public meeting, on January 26, 1925, the nature of which was not definitely disclosed when the request was made. It is stated in the application for permission to use the building that relator wants it "for the purpose of holding a lecture therein. That the said lecture will be for the purpose of discussing the social and moral issues of the day, by a highly cultured and respectable minister of the gospel, and other speakers." There was tendered with the application, the sum of $50.00, that being the correct rental charge as fixed by the rules of the commission. The relator alleges that he is a citizen of the United States, and is a resident and a tax payer of the city of Bismarck; that the respondents have unlawfully refused at all times to rent him the auditorium for the purpose aforesaid; that the refusal is a discrimination against him; that the commission has held itself out to the public as ready and willing to rent the building upon the payment of the charges fixed for such use; and that the action of the commission is clearly arbitrary and without any lawful reason or excuse. The petition is supported by an affidavit of the relator in which the application to the commission for the use of the auditorium is set forth and wherein it

is alleged that the refusal of the respondents was "willful, deliberate, and constituted an attempt on the part of said official to unlawfully discriminate against the petitioner and in favor of intolerant and reactionary ideas." What such "intolerant and reactionary ideas" are is not disclosed; nor is any hint given as to the nature of the "ideas" the "learned and cultured minister" will expound.

Upon this petition an alternative writ was issued directing the respondents to show cause, on February 6, 1925, why the writ of mandamus should not be made permanent. To this alternative writ the respondents in due time made a return. The respondents allege that the auditorium was erected by the city at public expense and is rented for public meetings under certain regulations prescribed by the city commission; that the building is under the control and jurisdiction of the city commission and that it is responsible for the proper care, use and management thereof; that the city has owned the building for 15 years and that during such period the commissioners have uniformly exercised discretion in determining whether and to whom the building should be rented. It is then alleged that no disclosure was made as to the specific character of the meeting proposed to be held in the auditorium; that the "respondents were informed by others that such meeting was calculated to create and arouse religious and racial prejudice, ill will and strife; that many protests against holding the same were received by the respondents; that though respondents did not know, and do not now know the detailed and specific purposes of the meeting, it appeared from the premises that it would prove inimical to the good will, harmony and good order existing in the city; that the respondents in the exercise of their official judgment and discretion, and believing they were acting for the best interest of the city, refused to rent the building to the petitioner for said meeting." The case was submitted to the trial court upon the petition and the return. No testimony was introduced.

A judgment quashing the alternative writ of mandamus was entered.

This appeal is taken from the "order for judgment and the judgment and decree."

It is the contention of the relator that the auditorium is a public utility; that it has been "dedicated" to the purpose of public assembly; and that the commission abused its discretion in the circumstance in

refusing to rent the building to the relator upon timely tender of the proper fee. Counsel for the relator upon the oral argument, conceded that the city commission had some discretion in the matter of renting the auditorium; that it might properly refuse to rent it to persons or individuals who intend to put on performances therein of an immoral character; or if it was to be used for lectures advocating certain doctrines tending to revolutionary violence. The main contention of the relator is that the building is a utility, within the definition of chapter 192 of the Session Laws of 1919, and particularly of § 2 thereof, which defines the term, "public utility." Chapter 192 defines fully the powers and duties of the board of railroad commissioners with reference to public utilities such as common carriers, telegraph and telephone companies, electric light, gas and heating companies, warehouses, packing and cold storage companies, and stock yard companies. From the premise that the auditorium is a public utility, within the statutory definition, supra, relator proceeds to the conclusion that he is the victim of unlawful and arbitrary discretion, as defined and prohibited by § 16, chapter 192, Sess. Laws 1919, the public utility law of this state, specifically prohibiting discrimination or preferences by any utility; "subject to . . . this act." It is then argued, and the authorities cited all relate to, and, in a large measure, support the proposition that there may be no arbitrary discrimination against the patrons of a public utility, and that all customers alike are entitled to the service upon complying with reasonable and lawful rules and regulations and paying the required and proper charge. It is then urged that this court has jurisdiction to determine whether the decision of the commission refusing to rent the auditorium in this instance was not unreasonable, arbitrary and oppressive. Again, reliance is placed upon the rule that "a rule of a public service company must be reasonable and courts are invested with jurisdiction over the question whether any rule or regulation is fair and just, or unreasonable and oppressive." 4 McQuillin, Mun. Corp. § 1912.

It will be noted that the relator's position rests on the theory that inasmuch as the auditorium is built for the purpose of public assembly, it is a public utility, analogous to a gas or heating plant; that the city commission must permit any member of the public the use of such utility, upon his complying with the reasonable rules and regu-

lations of the commission; and that the courts possess jurisdiction to review and revise the action of the commission in refusing the use of such utility, when the refusal is arbitrary, unreasonable or oppressive. Relator does not contend that he has brought himself within the provisions of chap. 191, Sess. Laws, 1919, relating to the use of public buildings for meetings of a nonsectarian or nonfraternal character.

The contention of the respondents on the other hand is that the auditorium is not a public utility in the sense contended for by the relator; rather that it is ordinary property under the control of the city commission and that the commission must, of necessity, exercise discretion, whether and to whom, and on what terms to rent or lease the building at any given time. It is then contended that the discretion was lawfully and properly exercised in the instant case, and there is not any jurisdiction or power in the courts to revise or control that discretion.

It is elementary that mandamus is not a proper remedy to control official discretion. Resort may be had to it in order to compel officers to perform a legal duty; but where the performance of the legal duty involves the exercise of judgment or discretion, such judgment or discretion cannot be controlled by mandamus. Mogaard v. Garrison, 47 N. D. 468, 182 N. W. 758, and cases cited.

Section 3776, Comp. Laws, 1913, gives cities under the commission form of government the power to acquire and hold real and personal property "for corporate purposes;" Section 3817, Comp. Laws, 1913, imposes on the board of city commissioners the duty to manage the property of the city, and gives the board the specific power to adopt by-laws, rules and regulations for the government, the *"good order* of the city," and for the benefit of the trade, commerce and health of its inhabitants. Section 3818, gives the city commissioners the power to "control the finances and property of the corporation," and to provide for the erection and care of public buildings. The auditorium was built under the authority of § 3818, supra, sub. sec. 74. See also § 4016, Comp. Laws, 1913, and chap. 170, Sess. Laws 1923.

The auditorium is a public building and the city commission is charged with the duty of managing and caring for it as property of the city. No express authority is found in the statutes for the practice of the city commission to rent or lease the building for public meetings

of various kinds; it seems to be conceded, and, of course, properly so, that such power is necessarily implied. It is further conceded, on the oral argument, that the duty to let the auditorium to all applicants is not absolute; that discretion in that regard exists to the end that immoral or unlawful performances, to the detriment of the community, may not be given therein. It cannot be denied that under the statutes the city commission owes a duty to the public not to permit any of the public buildings under its control to be used for purposes or in a manner that may put in jeopardy the health, the morals or good order of the people of the city. In selecting the means most appropriate to the end, as well as best calculated to serve the public interest, the commission must exercise judgment and discretion. It is not the function "of courts to act as city regulators, and unless the authority of the representatives of the citizens has been exceeded their action cannot be interfered with because it may not seem to other persons to be as wise as it might be." Torrent v. Muskegon, 47 Mich. 115, 41 Am. Rep. 715, 10 N. W. 132. In such circumstances a plain case of abuse of discretion must be presented before the courts would be justified in interfering. See Pettit v. Macon, 95 Ga. 645, 23 S. E. 198.

What facts appear in the instant case, tending to show an abuse of discretion in refusing to let the auditorium to the petitioner? We find none. Indeed, the record affirmatively shows that the commission had information which led it to believe that the use contemplated by petitioner might tend to "create and arouse religious and racial prejudice . . . and . . . prove inimical to the good will, harmony and good order existing in the city." No showing is made to the contrary. The commission received many protests from citizens against the use of the building. The commission evidently was convinced that the objectors rather than the petitioner and the "learned and cultured minister" had the better reason on their side. The petitioner elected not to disclose, either in his request for the use of the building or in the affidavit supporting the application for the writ of mandamus, the name of the alleged minister of the gospel who was to deliver a lecture, the names of any of the "other speakers" who were to appear, the subject matter of their discourses, the ideas, aims or objects to be promoted by the meeting, or the name of the organization, if any, in whose behalf these unnamed orators would address the public. All of these matters

appeared in the trial court robed in silence and anonymity. Nor is this court permitted to lift the veil; the empire of ideas to be traversed by the speakers at the proposed meeting is as completely invisible here as it was in the court below. Upon elementary rules of pleading and practice, a cause of action, in a mandamus proceeding against public servants touching the performance of their official duties, must stand forth upon the record without dissimulation or disguise. Neither the trial court nor this court should be asked to overthrow the decision of the city commission, in a matter over which it concededly has discretionary power, upon surmise, suspicion or conjecture. Counsel for petitioner made no showing to the trial court to warrant even a guess that the commission acted arbitrarily in refusing to rent the auditorium. He did not present to the trial court a single fact or circumstance from which a rational person could draw the conclusion that the use of the building was refused upon any ground other than a good faith belief that a contrary course would be "inimical to the good will, harmony and good order existing in the city." If such was—we must assume it was—the honest judgment of the city commissioners, it was proper to decline to permit city property to be used for a purpose from which such undesirable results were anticipated. Certainly no court should presume to set aside their ruling in this regard when the record, as is the case here, is devoid of a single circumstance from which an inference of bad faith or arbitrariness can be drawn.

We are not required to discuss or define the limits of the discretion which may be exercised by the commissioners of the city of Bismarck in refusing to rent the auditorium for public meetings, or under what circumstances, if any, that discretion may be controlled by the courts. No such question is before us. The petitioner has wholly failed to bring into the record before us a single fact, which, under any rule of law suggested by his counsel, would entitle him to a writ of mandamus. Petitioner's counsel concedes that the commission have some discretion with respect to the uses for which the auditorium should be rented, but fails entirely to present any facts that negative or tend to negative the presumption that this public board exercised its judgment upon the matter before it in good faith and in the public interest. In the only case we have seen on the subject it was held that the

city of Buffalo had "absolute discretion to rent or refuse to rent" its public buildings for public meetings and that mandamus did not lie. People ex rel. Keddy v. Malone, 175 N. Y. Supp. 565, affirmed per curiam in 189 App. Div. 921, 178 N. Y. Supp. 911. On this point we express no opinion.

The cases cited by counsel for the petitioner to sustain the view that a municipal auditorium is a "public utility" within the definition of chap. 192, Sess. Laws 1919, do not support that contention. In fact, they do not deal with the subject. In the cases of State ex rel. Manhattan Constr. Co. v. Barnes, 22 Okla. 191, 97 Pac. 997, and Egan v. San Francisco, 165 Cal. 576, 133 Pac. 294, Ann. Cas. 1915A, 754, on which the principal reliance is placed, the courts simply held that the building of an auditorium or public assembly hall was a public purpose and that public funds could be expended and taxes levied for such purpose. No authority is cited by petitioner that sustains his views on this point; nor does any case cited by him throw light upon any issue in this proceeding.

The application for the writ of mandamus was properly denied and the judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.