**GREAT LAKES PIPE LINE COMPANY,
a Corporation, Plaintiff and Appellant,**

**v.**

**The CITY OF GRAND FORKS, a Municipal
Corporation, Defendant and Respondent.**

No. 8256.

Supreme Court of North Dakota.

April 27, 1966.

Rehearing Denied May 13, 1966.

Shaft, Benson, Shaft & McConn, Grand Forks, and William C. Nulton, Kansas City, Mo., for plaintiff and appellant.

Gordon Caldis, City Attorney, Grand Forks, for defendant and respondent.

KNUDSON, Judge.

This is an appeal from an order of the district court of Grand Forks County denying the application of Great Lakes Pipe Line Company for a writ of mandamus.

The Great Lakes Pipe Line Company, plaintiff and appellant, is the sole owner of certain real property lying to the north of U. S. Highway No. 2 and located in the northwest part of the corporate limits of the City of Grand Forks, North Dakota. The City of Grand Forks is defendant and respondent in this action.

In 1964 the City annexed the real property owned by the Company. The annexation proceedings were initiated by the City and were protested by the Company. The validity of the annexation is not questioned. After its property had been annexed to the City of Grand Forks, the Company petitioned the city council to exclude and disconnect its property from the city limits. In its petition, the Company alleged, among other things, that its property is now within and borders on the limits of the City of

Grand Forks; that its property is wholly unplatted, not having been laid out in municipal lots and blocks; and that there are no municipal sewers other than sewer outlets, water mains, pavements, sidewalks, or other municipal improvements that have been made or constructed therein.

In response to the Company's petition, the city council heard the matter on December 21, 1964, and made the following findings of fact and conclusions:

1.

On the 7th day of December, 1964, the Great Lakes Pipe Line Company filed its Petition to Exclude and Disconnect From the City of Grand Forks the following described property which is situated within and borders on the limits of the City of Grand Forks, North Dakota, to-wit: [Metes and bounds description omitted.]

2.

Notice of the presentation of said Petition was published in the official newspaper, The Grand Forks Herald, on December 7, 1964, and on December 14, 1964.

3.

The Great Lakes Pipe Line Company is the sole owner of the property described in the said Petition and there are no electors residing therein.

4.

Pursuant to 57–02–39 of N.D.C.C. the Great Lakes Pipe Line Company property described herein was platted and described as:

Lot "A, Auditor's Subdivision No. 1 of part of the South Half (S½) of Section 32, Township 152 North, of Range 50 West, Grand Forks County, North Dakota," such Plat being recorded in office of the Register of Deeds on April 28, 1953, in Book 141 of Deeds at page 376.

### 5.

That within the City of Grand Forks, the sewer and water mains are commonly situated within the public right-of-way and similar to most all properties within the City, Great Lakes Pipe Line Company is here connected with, and is served by both sewer and water through private service lines extending from its property to the water main and sewer line situated in the abutting highway right-of-way. The water meter and water meter pit is situated within the Great Lakes Pipe Line Company property described herein.

### 6.

That on the 31st day of August, 1946, the Great Lakes Pipe Line Company, which was then outside the Grand Forks City Limits, requested the City to permit it to connect with the City water system; that following its entry into a written contract with the City, the Great Lakes Pipe Line Company was permitted to connect therewith and has been served with water service since such time.

### 7.

That on the 27th day of July, 1948, the Great Lakes Pipe Line Company, which was then outside the Grand Forks City Limits, requested the City to permit it to connect with the City sewer system; that following its entry into a written contract with the City, the Great Lakes Pipe Line Company was permitted to connect therewith and has been given sewer service since such time.

From the foregoing Findings of Fact the Grand Forks City Council concludes and decides that the Great Lakes Pipe Line Company is not entitled to have the said territory disconnected and excluded from the City of Grand Forks.

After the city council had decided that the Company was not entitled to have its property disconnected and excluded from the City, the Company began this proceeding and alleged in its amended complaint, among other things, that there are no electors residing on its property; that its property is wholly unplatted because it has not been laid out in municipal lots and blocks; that there are no municipal sewers other than sewer outlets, water mains, pavements, sidewalks, or other municipal improvements constructed on its property; and that the City has the duty to exclude and disconnect its property from the municipality pursuant to Sections 40–51–02 and 40–51–04, N.D.C.C., and has arbitrarily and unlawfully refused and neglected to perform that duty. The Company prayed that the district court issue a peremptory writ of mandamus commanding the City, through its governing body, to exclude and disconnect its property.

The case was tried without a jury and the court in its memorandum opinion said:

I also have checked the various rulings of the Supreme Court of the State of North Dakota and if the statutory law and the rulings of the Supreme Court were all that I would have to base my findings on it would, in my opinion, be necessary for me to grant to the Plaintiffs the writ of mandamus as they have applied for, because I do feel that the instruments introduced in evidence as exhibits show that the property in question was not platted, as that term is understood and meant by Section 40–51–04 of the North Dakota Century Code, and that therefore the City acted arbitrarily and illegally.

However, we have to also consider Defendant's Exhibit 4 and Plaintiff's Exhibit B, and these agreements were signed in order to obtain out-of-town sewer connections with the sewer system of the City of Grand Forks for out-of-town water connections from said City.

The City's exhibit 4 and the Company's exhibit B contained the following language:

That should petitions hereafter be filed by persons in the vicinity of the above

described premises for the inclusion thereof within the limits of the City of Grand Forks, or should said premises be included within the City of Grand Forks and petition[s] be filed for the extension of the sewerage system [water mains] to the vicinity of said premises by special assessment projects, the undersigned will not protest against either such extension of city limits, or the construction of such special improvements, but nothing in this agreement shall be construed as requiring the undersigned to join in any construction of any such improvements.

After considering the language of the two exhibits which was quoted above, the trial court further stated:

Now, in Plaintiff's Exhibit B, under Paragraph 4 thereof, the Plaintiffs agreed not to protest the inclusion of their property, which is described in the complaint and which is herein involved, as being brought into the City Limits of the City of Grand Forks and agreed that they could be brought in under this provision and once brought in they should not then be permitted under this agreement to apply for a deannexation * * *.

The agreement would result in giving the City nothing for the consideration of this agreement and it is therefore the Court's duty to interpret that these provisions, Plaintiff's Exhibit B, Subsection 4, and Defendant's Exhibit No. 4, Subsection 7, as meaning that the Plaintiffs, once being brought within the City Limits, their land being brought into the City Limits, it would also have to go along as a corollary thereto, in order to make any meaning to this part of the agreement, that they, therefore, would not thereafter apply for deannexation of their said property.

And based thereon it will have to be the Court's ruling that the Plaintiff's application for a writ of mandamus will be denied.

The initial issue on this appeal is whether the trial court erred in holding that the contractual language from exhibit 4 and exhibit B, which was quoted above, constituted a waiver by the Company of its statutory right to protest the inclusion of its property within the city limits of Grand Forks and therefore, a waiver of its statutory right to file a petition for the exclusion of its property from the city limits of Grand Forks.

The Company contends that the language in exhibit 4 and exhibit B does not constitute a waiver of its right to protest the annexation of its property in this case since the language relates only to an agreement not to protest in the event of petitions filed by persons in the vicinity. It argues that the language does not relate to the second method of annexation provided for by statute which was used in this case, that is, annexation by resolution of the city council. The Company admits that the language in the exhibits also refers to an agreement not to protest in the event petitions are filed for extension of city sewerage or water mains by special assessment projects and notes that this provision does not apply in this case.

The City contends that the Company's argument conveniently omits reference to the language in the exhibits which says, "or should said premises be included within the City of Grand Forks, * * * the undersigned [Company] will not protest against * * * such extension of city limits." The City argues that this language should be construed as meaning that when the Company's property was included within the City of Grand Forks by action of the city council, which was done in this case, the Company was precluded from protesting the inclusion of its property. The City agrees with the trial court's conclusion that once the Company had waived its right to protest it had also waived its right to petition for deannexation of its property.

After considering the pertinent language in the two exhibits and the contentions of both parties which are substantially set forth above, it is apparent that the City and the Company have both grounded their contentions upon language which has been taken out of context from the two exhibits.

Section 9–07–06, N.D.C.C., reads as follows:

Contract interpreted as a whole.—The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others. See also: Delzer Construction Co. v. New Marian Homes Corp., N.D., 117 N.W.2d 851.

A careful reading of the provision in the two exhibits reveals that the Company has waived its right to protest only if certain conditions set forth within the provision have been fulfilled. The first clause of the provision reads as follows:

That should petitions hereafter be filed by persons in the vicinity of the above described premises for the inclusion thereof within the limits of the City of Grand Forks, * * *.

Before this clause can have any effect upon the rights of the parties to the contract, petitions would have to be filed by persons in the vicinity of the Company's property. It is not disputed that such petitions were not filed. Therefore, this clause has no effect.

The second clause of the provision is expressed in the conjunctive as follows:

* * * or should said premises be included within the City of Grand Forks *and* petitions be filed for the extension of city sewerage system [water mains] to the vicinity of said premises by special assessment projects, * * *. [Emphasis supplied.]

This clause requires that two conditions be fulfilled before it can have any effect upon the rights of the parties. The first condition is that the Company's property must be included within the City of Grand Forks. The record supports the conclusion that this condition was fulfilled since the city council did, in fact, include the Company's property within the city limits. But the fulfillment of this condition alone is not sufficient to make the clause operative because it is expressed in the conjunctive. It is also necessary that the condition requiring that petitions be filed for the extension of city sewerage system [water mains] to the vicinity of the Company's property by special assessment projects must be fulfilled. Nothing in the record indicates that such petitions were filed. If one of the conditions in this clause has not been met, the entire clause has no effect and since the record shows that neither of the two clauses discussed above have become operative, the remaining part of the provision which is set forth below is also not operative.

* * * the undersigned [Company] will not protest against either such extension of the city limits, or the construction of such special improvements, but nothing in this agreement shall be construed as requiring the undersigned to join in any construction of any such improvements.

The only reasonable conclusion which can be made from a reading of the whole provision is that the Company has not waived its right to protest the inclusion of its property within the city limits of Grand Forks when its property has been included in the manner shown by the record. Therefore, the Company has not waived its right to file a petition for the exclusion of its property from the city limits. The trial court erred in holding that the Company had waived its right to file such a petition.

Our holding that the Company did not waive its statutory right to file a petition for the exclusion of its property from the city limits raises the question of whether the Company should have been granted a writ of mandamus commanding the City to exclude the Company's property from the city limits.

The record discloses that the Company petitioned the City to exclude and disconnect its property from the city limits pursuant to Section 40–51–02, N.D.C.C., which is set forth below.

Exclusion of territory from municipality upon petition.—Upon a petition signed by not less than three-fourths of the qualified electors and by the owners of not less than three-fourths in assessed value of the property in any territory within the limits of an incorporated municipality and bordering upon such limits, the governing body of the municipality, by ordinance, may disconnect and exclude such territory from the municipality. The provisions of this section, however, shall apply only to lands which have not been laid out into municipal lots or blocks.

The Company has complied with Section 40–51–03, N.D.C.C., which provides for the publication of notice of the presentation of the petition.

Section 40–51–04, N.D.C.C., provides that if certain conditions appear to exist, the governing body of the municipality shall have the duty to disconnect and exclude such territory from the municipality.

Property to be excluded from municipality on petition.—If it appears upon the hearing held by the governing body upon a petition filed under section 40–51–02 that the property described in such petition is within the corporate limits of the municipality and borders thereon, and that it is wholly unplatted, and that no municipal sewers other than sewer outlets, water mains, pavements, sidewalks, or other municipal improvements have been made or constructed therein, it shall be the duty of the governing body of the municipality to disconnect and exclude such territory from the municipality. Section 40–51–04, N.D.C.C.

The Company contends that Section 40–51–04, N.D.C.C., imposes a clear duty upon the governing body, in terms that are un-

ambiguous, to disconnect and exclude property from the city limits when the following conditions exist:

1. The property is within the corporate limits of the municipality and borders thereon.

2. The property is wholly unplatted.

3. No municipal sewers other than sewer outlets, water mains, pavements, sidewalks, or other municipal improvements have been made or constructed therein.

The Company argues that the fact that its property was within the corporate limits of the City of Grand Forks and borders thereon is shown to exist by paragraph 1 of the city council's findings of fact. This is not disputed by the City.

The Company further argues that the fact that its property was wholly unplatted as required by Section 40–51–04, N.D.C.C., is established by paragraph 4 of the city council's findings of fact. Basically, this contention consists of the following points: (1) The findings in paragraph 4 show that the only plat which has been made of the Company's property is a county auditor's plat which has been made pursuant to Section 57–02–39, N.D.C.C., and which describes the property as follows:

Lot "A, Auditor's Subdivision No. 1 of part of the South Half (S½) of Section 32, Township 152 North, of Range 50 West, Grand Forks County, North Dakota," such Plat being recorded in office of the Register of Deeds on April 28, 1953, in Book 141 of Deeds at page 376.

(2) The platting of municipalities is governed by Chapter 40–50, N.D.C.C. (3) The designation of the property as "Lot 'A, Auditor's Subdivision No. 1'" is a county auditor's designation for taxation purposes as provided by Section 57–02–39, N.D.C.C. (4) It is not a platting as that term is used in Sections 40–51–02 and 40–51–04, N.D.C.C. (5) Therefore, the City's findings, on their face, conclusively establish that

the area is wholly unplatted, not having been laid out in municipal lots or blocks as required by Section 40–51–02, N.D.C.C.

The Company's contention relating to the lack of municipal improvements on its property is that the findings of fact of the city council show that there are no municipal improvements made or constructed within its premises. It argues that the findings show only that its property is served, under contract, through a water main which lies outside its property and through a privately owned sewer main that is connected to the City's sewerage system a considerable distance from its premises. It contends that the findings show only a connection with the City's sewerage and water systems and that this does not constitute municipal improvements made or constructed on its premises. The Company also argues that its ownership of the water meter which is located on its property is established by the City's exhibit 4.

Although the Company concedes that mandamus will not lie to control matters in which the city council may exercise its discretion, it contends that where the statutory conditions are met and a prescribed duty arises, there is no discretion remaining and that the exercise of the duty can be compelled by mandamus. The Company argues that the city council has the discretion to determine the facts and having done so, its discretion has been exercised and the statutory duty arises.

The City contends that the city council, in its findings of fact, determined that the Company's property was not wholly unplatted since a county auditor's plat of the premises was in existence and that such a plat can reasonably be regarded as a plat within the meaning of Section 40–51–04, N.D.C.C. The City further contends that a part of the sewerage and water systems and also the water meter and water meter pit are located on the Company's property. The City also claims that it owns the water meter and contends that it is an "improvement" made or constructed in the Company's property.

The City construes Section 40–51–04, N.D.C.C., as giving the city council the discretionary right to make a judgment of whether the conditions set forth in this section exist, and that when it does make findings of fact and conclusions that these conditions do not exist, its findings of fact and conclusions are conclusive upon the courts and cannot be reviewed by mandamus. The City cites Section 40–51–06, N.D.C.C., as authority for the proposition that the findings of fact and conclusions of the city council of a city having more than three thousand inhabitants are conclusive upon the courts. This section reads as follows:

> Review of determination of governing body by certiorari—Review restricted.— In cities having a population of three thousand or more inhabitants according to the last federal or state census, the findings of fact and conclusions of the governing body of the city made after the hearing upon a petition for the exclusion of territory from the city shall be conclusive upon the courts. If any interested party is dissatisfied with the findings of fact upon which a decision is made by the governing body of a municipality other than a city having a population of three thousand or more inhabitants, such party may make an application to the district court for a writ of certiorari. The review upon such writ shall extend only to the determination of whether the governing body has pursued its authority regularly, and shall include the determination of the sufficiency of the evidence to sustain the findings of fact and of law made in the course of the exercise of such authority, and the correctness, as a matter of law, of the order or decision inquired into, and the court may take such evidence as may be necessary to determine the question presented.

This court has held on many occasions that the prerequisites to the issuance of a writ of mandamus are that there must not be some other plain, speedy, and ade-

quate remedy in the ordinary course of the law and that the party applying for the writ must show that he has a clear legal right to the performance of the particular act sought to be compelled by the writ. Dakota Nat. Ins. Co. v. Commissioner of Insurance, 79 N.D. 97, 54 N.W.2d 745; Midland Produce Co. v. City of Minot, 70 N.D. 256, 294 N.W. 192; Bismarck Tribune Co. v. Wolf, 64 N.D. 656, 255 N.W. 569; Strauss v. Costello, 29 N.D. 215, 150 N.W. 874; Schonberg v. City of Fargo Planning Commission, N.D., 110 N.W.2d 830; State ex rel. Eckroth v. Borge, 69 N.D. 1, 283 N.W. 521; Cary v. Morton County, 57 N.D. 700, 223 N.W. 928; State ex rel. City of Minot v. Willis, 18 N.D. 76, 118 N.W. 820.

It appears that the Company has no right of review in the ordinary course of the law. We next consider whether the Company has shown that it has a clear legal right to the performance of the act sought to be compelled. In Dakota Nat. Ins. Co., supra, we stated this issue as follows:

The question then is, does the petitioner here allege facts, which if established would demonstrate such a clear legal right.

The record shows that the Company, in its petition and in its amended complaint has alleged all the facts, which if established, would demonstrate a clear legal right to have its property disconnected and excluded as required by Section 40–51–04, N.D.C.C. The only reasonable construction of Section 40–51–04, N.D.C.C., is that if certain facts appear, the city council shall have the duty to disconnect and exclude such territory from the municipality. In order to determine whether the facts alleged by the Company have been established, we must look to the findings of fact and conclusions of the city council for the reason that Section 40–51–06, N.D.C.C., provides that the findings of fact and conclusions of the governing body of a city with more than three thousand inhabitants are conclusive upon the courts. Section 40–51–04, N.D.C.C., provides that if the three

conditions set forth therein appear to exist, it shall be the duty of the city council to disconnect and exclude the territory from the municipality. In determining whether the conditions in Section 40–51–04, N.D. C.C., have been established we must examine the findings of fact and conclusions of the city council.

The first condition set forth in Section 40–51–04, N.D.C.C., is that the property sought to be excluded must be within the corporate limits of the municipality and must border thereon. Paragraph 1 of the city council's findings of fact and conclusions specifically states that the property sought to be excluded is situated and borders on the limits of the City of Grand Forks. Therefore, the first condition has been established.

The second condition which must be established is that the property sought to be excluded must be wholly unplatted. Section 40–51–02, N.D.C.C., provides that only lands which have not been laid out into municipal lots or blocks may be disconnected and excluded. Paragraph 4 of the city council's findings of fact and conclusions shows that a county auditor's plat of the Company's property has been made pursuant to Section 57–02–39, N.D.C.C., wherein the property is described as Lot "A, Auditor's Subdivision No. 1. * * *" This Section is found in Title 57, N.D.C.C., which is entitled, "Taxation."

We have found no cases in which this court has decided the question of whether a county auditor's plat made for taxation purposes is sufficient to preclude property platted in this manner from being disconnected and excluded from a municipality under the provision in Section 40–51–04, N.D.C.C., which requires the property to be wholly unplatted, and under the provision of Section 40–51–02, N.D.C.C., which allows only lands which have not been laid out into lots or blocks to be disconnected and excluded. However, the Supreme Court of Kansas has had occasion to decide this question in connection with their stat-

utes and under circumstances which are similar to those on this appeal. In considering a plat filed for taxation purposes, the Kansas court said:

> It is noted that the statute appears to define platted lands as land subdivided into "blocks and lots." Whether the Fairfax Industrial District or any part was so subdivided is a crucial question when determining the validity of this plat. * * * The plat was filed in 1925 and its use was specifically limited to facilitating description of acreage for taxation purposes. It discloses four roads within the entire district. The plat does not show blocks, streets and alleys which conform to those of adjoining Kansas City. It was not filed without reservation. It shows that the Kansas City Industrial Land Company did not dedicate for public use any streets, alleys or public highways, except as indicated thereon. Other forms of way were private property and were held by the company for its own use. It cannot be said that the plat complies with the provisions of G.S.1949, 13–1413 in relation to platting and subdividing a tract of land. It further appears from the plat that there were embraced therein some fifteen tracts of land of assorted shapes which ranged in size from one to 161.38 acres and some of which were not bound by any road or street. The plat discloses no lots or blocks but only tracts by number.

> We have interpreted the word "block" to mean a space in a city usually rectangular in shape, enclosed by streets and used or intended to be used for building purposes. While blocks do not have to be any particular size or shape, there are certain standards to which a lot or block must in some measure conform. It cannot be said that the tracts of the size, shape and area disclosed on the purported plat could be construed as "blocks." Courts apply to words the definitions already given them by common usage. According to all dictionaries and the popular understanding everywhere, a "block" is a

portion of a city surrounded by streets. In common practice, city plats are made to conform with this understanding and the legislature had in mind blocks so constituted and not tracts arbitrarily designated as such by the donor of a plat. Bowlus v. City of Iola, 82 Kan. 774, 109 P. 405; McGrew v. Kansas City, 64 Kan. 61, 67 P. 438. For a compilation of cases on this subject, see Berndt v. City of Ottawa, 179 Kan. 749, 298 P.2d 262. State ex rel. Martin v. City of Kansas City, 181 Kan. 870, 317 P.2d 806, 811.

The Kansas court noted that their statute appeared to define platted lands as land subdivided into "blocks and lots," although their statute did not specifically set forth this definition. The two pertinent provisions of G.S.1955 Supp., 13–1602a, were quoted by the court as follows:

> ■ "Whenever any land adjoining or touching the limits of any city has been subdivided into *blocks and lots,* or [2] whenever any *unplatted* piece of land lies within (or mainly within) any city, * * * said lands * * * may be * * * taken into * * * such city by ordinance duly passed." [Emphasis supplied.] State ex rel. Martin v. City of Kansas City, supra.

Section 40–51–02, N.D.C.C., refers to lands "which have not been laid out into * * * lots or blocks" and Section 40–51–04, N.D.C.C., refers to "wholly unplatted" lands. Although the purpose of the Kansas statute is to regulate annexation of land as compared with our statutes which regulate the disconnection and exclusion of land from a municipality, we believe that the Kansas court was correct in their interpretation of the meaning of the words, "blocks and lots," and that the plat in this appeal did not lay out the Company's property into municipal lots or blocks.

The Kansas court also noted that the plat did not comply with the provisions of G.S. 1949, 13–1413, which relates to the platting and subdividing of lands contiguous to a municipality. Chapter 40–50, N.D.C.C.,

which is entitled, "Platting Townsites," also sets forth the requirements for laying out townsite additions and subdivisions. Section 40–50–01, N.D.C.C., requires that a survey and plat of a townsite addition shall be made and that the plat "shall describe particularly and set forth all the streets, alleys, and public grounds, and all outlots or fractional lots within or adjoining the townsite or municipality, together with the names, width, courses, boundaries, and extent of all such streets, alleys, and public grounds."

The plat before us was made pursuant to Section 57–02–39, N.D.C.C., which does not contain all the requirements for making a plat which are found in Chapter 40–50, N.D.C.C. Section 57–02–39, N.D.C.C., does not require a plat made pursuant to this Section to set forth all the streets, alleys, and public grounds as does Section 40–50–01, N.D.C.C. It is possible for an auditor's plat to be made without first surveying the land to be platted pursuant to Section 57–02–39, N.D.C.C., while a survey is required by Section 40–50–01, N.D.C.C. We believe that the words, "wholly unplatted," as used in Section 40–51–04, N.D.C.C., mean that no part of the land sought to be excluded has been platted pursuant to Chapter 40–50, N.D.C.C.

In view of the above discussion we believe that the second condition set forth in Section 40–51–04, N.D.C.C., which requires that property be wholly unplatted has been established.

■ The third statutory condition which must be established is that no municipal improvements have been made or constructed in the property sought to be disconnected and excluded. The city council, in paragraph 5 of its findings of fact and conclusions, found that sewer and water mains are commonly situated in the public right of way within the City of Grand Forks and that the Company is connected with, and is served by both sewer and water through private service lines. A water meter and water meter pit were found to be located in the Company's property. Paragraphs 6 and 7 of the findings of fact and conclusions show that the Company was permitted to connect with the City's sewerage and water systems pursuant to private contracts between the City and the Company.

We are confronted with the question of whether the findings referred to above and which were quoted earlier in this opinion establish that no municipal improvements have been made or constructed in the Company's property within the meaning of Section 40–51–04, N.D.C.C. We must determine whether the sewers, water mains, or other improvements in the Company's property are *municipal* sewers, water mains, or improvements.

The term, "municipal," was discussed in Davenport v. Elrod wherein the Supreme Court of South Dakota stated:

The word "municipal" appears to have been derived from "municipium," meaning a town, particularly in Italy, which possessed the right of Roman citizenship, but was governed by its own laws, a free town; and it may be thus defined: (1) Of, or pertaining to, a city or corporation having the right of administering local government; as, municipal rights, municipal officers. (2) Of, or pertaining to, a state, kingdom, or nation; as municipal law, municipal offense; in contradistinction to international law or international offense. Web.Internat.Dict. Bouvier says: "Strictly, this word applies only to what belongs to a city." Davenport v. Elrod, 20 S.D. 567, 107 N.W. 833.

The city council's findings of fact and conclusions state that the sewer and water service received by the Company is through private service lines. These private service lines are the only improvements in the Company's property which the findings mention, aside from the water meter and the water meter pit. The record shows that the Company's private service lines were constructed by the Company pursuant to written con-

tracts for out-of-town connections and that the service lines were constructed prior to the time that the Company's property was included within the city limits. We do not believe that the private service lines existing in the Company's property are within the definition of municipal sewers, water mains, or improvements contemplated by Section 40–51–04, N.D.C.C. In our opinion, the City's exhibits 4 and 5 show that the water meter is owned by the Company and is not a municipal improvement. In view of the above discussion, the city council's findings of fact and conclusions show that there are no municipal improvements in the Company's property.

█ Our conclusion that the findings of fact and conclusions of the city council have established the conditions set forth in § 40–51–04, N.D.C.C., requires, as a matter of law, the city council to comply with the mandatory provision in this section, that is, the city council has the duty to disconnect and exclude the Company's property from the City of Grand Forks. Therefore, the Company has a clear legal right to the performance of this duty by the city council. A writ of mandamus is a proper remedy to compel the performance of a duty specially enjoined by the law when no discretion is involved in the performance of the duty. Midland Produce Co. v. City of Minot, 70 N.D. 256, 294 N.W. 192, 193; State ex rel. Conrad v. Langer, 68 N.D. 167, 277 N.W. 504, 509; State ex rel. Herbrandson v. Vesperman, 52 N.D. 641, 204 N.W. 202.

The remaining issues which have been raised by the parties are not necessary to the disposition of the case; therefore we do not discuss them.

The order denying the application for a writ of mandamus is reversed, and the court is ordered to grant the requested writ.

TEIGEN, C. J., and STRUTZ, J., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

ERICKSTAD, Judge (dissenting).

It is an accepted rule of statutory construction that words must be given their plain and ordinary meaning. Under § 40–51–04, N.D.C.C., it does not become the duty of the governing body of a municipality to exclude property from the municipality unless, among other things, the property sought to be excluded is "wholly unplatted."

"Wholly" is defined in Webster's Third New International Dictionary (1961), as follows:

1. to the full or entire extent; without diminution or reduction; altogether, completely, totally * * * 2. to the exclusion of other things; solely. * * *

In the instant case the property was platted pursuant to the provisions of § 57–02–39. It was therefore not "wholly unplatted." That being the case, the City was not obligated to grant the petition.

It is especially significant that the Legislature in § 40–51–02, in conjunction with the use of the permissive word "may," provided that exclusion could be granted only to lands that have not been laid out into municipal lots or blocks, but in § 40–51–04, when using the mandatory words "it shall be the duty of the governing body of the municipality to disconnect and exclude," it used the words "wholly unplatted."

In other words, the law does not under either section of the Code permit the governing body of a municipality to exclude property that has been laid out into municipal lots and blocks. However, it places a duty on the governing body of a municipality, when properly petitioned, to exclude property if, among other things, the property is wholly unplatted.

Had the Legislature intended that the provisions in §§ 40–51–02 and 40–51–04

mean the same, it is logical to assume that it would have used the same language. Having used different language, it must have intended different meanings.

Accordingly, I believe the trial court properly denied the writ of mandamus.