CITY OF FARGO, a municipal corporation, Plaintiff and Appellee,

v.

CASS COUNTY, a body corporate, Duane E. Hoehn, its Auditor, and Maxine M. Liversage, its Treasurer, Defendants and Appellants.

Civ. No. 9655.

Supreme Court of North Dakota.

Dec. 12, 1979.

Rehearing Denied Jan. 10, 1980.

Solberg, Stewart & Boulger, Fargo, for plaintiff and appellee; argued by Ward D. Briggs, Fargo.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for defendants and appellants; argued by Duane R. Breitling, West Fargo.

SAND, Justice.

The City of Fargo sought and obtained a writ of mandamus from the district court commanding Cass County to pay to the city auditor of Fargo all the moneys in the bridge fund in the treasury of Cass County, or which may come in to the bridge fund, which may have been or which shall be levied, assessed and collected from persons and property, or either, within the city of Fargo until such time as the city of Fargo's share of the costs of the bridges which are being constructed at First Avenue North and Twelfth Avenue North, or either of said bridges, has been paid in full from such tax and the city's other revenues used to finance such bridge or bridges. The court also set out certain guidelines to be followed by Cass County in carrying out the writ of mandamus. The court relied heavily upon § 24–08–08, North Dakota Century Code, as a basis for granting the writ.

Cass County appealed, contending that § 24–08–08, NDCC, was either impliedly repealed or in the alternative was unconstitutionally vague, or that the court misconstrued the phrase "bridge fund" and the phrase "or is about to be constructed," as found in § 24–08–08.

The facts are not in dispute.

The pertinent findings of fact by the trial court are:

"1. The County of Cass had no distinct fund known as a 'bridge fund' as designated in 24–08–08 NDCC. Neither does Cass County have a specific 'county road fund' as designated in 24–05–01 NDCC. Cass County does have a fund known as 'County Highway Department' which for all purposes is the same as the 'county road fund' and which is used as the basis for the 20% splitting to the cities under 24–05–01 NDCC.

"2. The 'County Highway Department' fund has, in addition to the mill levy, other sources of revenue commonly referred to as 'jackpot fund' sources including but not limited to the county's share from gasoline taxes, automobile registration, federal and state aid and matching funds, and federal revenue sharing funds. The fund is generated approximately 25% by a direct mill levy and approximately 75% from other given sources. For illustrative purposes only, the county budgeted approximately 1.6 million dollars for such fund, yet only had a mill levy of 3.72 mills generating approximately $380,000.00. Twenty percent of such $380,000.00 would be turned over to the cities pursuant to 24–05–01 NDCC based on the proportionate share of property in that city being taxed. Approximately 60% of all assessed property in Cass County lies within Fargo.

"3. From the 'County Highway Department' fund, the county operates a road department with permanent employees, road and bridge building equipment, a maintenance building and office. The employees in addition to building and maintaining roads and bridges also are responsible for snow removal. The fund

also pays for right of ways for roads. The County Highway Department does road work for townships and the county is reimbursed for such from the townships. For the last year, for an example, the county budget 1978–79 provided for construction and maintenance of approximately $934,000.00, salaries of $570,-000.00, new equipment of $150,000.00, office expense of approximately $10,000.00, and right of way of $60,000.00. The 'construction-maintenance' budget item under the 'County Highway Department' fund was budgeted for use for roads and bridges. The county spent, for an example, during the fiscal year 1977–1978 for bridge and work related to bridges including culverts and pipe arches (excluding salary) $183,350.00 on townships roads and $38,525.00 on county roads for a grand total of $221,873.00. If salaries for such bridge work (which is on a separate budget line item) is to be added thereto, the entire cost of bridge repair and construction would be $252,624.00."

The court issued the following Writ of Mandamus:

"For the reasons heretofore given and pursuant to Chapter 32–34 and other applicable statutes of the North Dakota Century Code, Cass County, a body corporate, Duane E. Hoehn, its Auditor and Maxine B. Liversage, its Treasurer, individually and jointly, are hereby ordered by this Writ of Mandamus and commanded to pay to the City Auditor of the City of Fargo all of the monies in the bridge fund of the treasury of Cass County, North Dakota, or which may come into the bridge fund of the treasury of Cass County which may have been or which shall be levied, assessed and collected from persons and property, or either, within the City of Fargo until such time as the City of Fargo's share of costs of the bridges which are being constructed at First Avenue North and Twelfth Avenue North, or either of said bridges, has been paid in full from such tax and the city's other revenues used to finance such bridge or bridges. That this Writ of Mandamus is governed by the following guidelines which are given with more particularity in this opinion:

"1) That the 'bridge fund' is hereby designated as that line item portion of the budget 'construction maintenance' of the budget known as 'County Highway Department'.

"2) That the mill levy for the bridge fund shall be in mathematical proportion as the amount budgeted for such 'construction maintenance' bears to the full amount of the amount budgeted for the County Highway Department.

"3) That the amount turned over to the City Auditor shall be reduced by such amount paid by the county to the city according to Section 24–05–01 NDCC, such reduction being limited to mill levy for the said bridge fund and accordingly not therefor all of the funds collected under Section 24–05–01 NDCC by the city.

"4) That such 'bridge fund' may in future budgets of the county be a designated fund to meet the requirements of Section 24–08–08 NDCC. Such 'bridge fund' shall include any expenses related to construction and repair of bridges and shall include but not necessarily limited to cost and repair of township bridges, cost and repair of county bridges, pipe arches, culverts, bridge engineering, and salaries directly related to bridges.

"5) That such levy, assessment and collection shall be made by the county just as soon as the City of Fargo certifies to the County of Cass that a resolution or motion has been passed authorizing the advertisement for bids for the construction of a bridge or bridges. The County of Cass shall make every effort to include such in its budget for the next following assessment. If such is impossible, the assessment shall be made on the succeeding assessment.

"6) This Writ of Mandamus is applicable to either one or both of such bridges. A certification shall be made for each of said bridges.

"7) Such assessment, levy and collection shall continue year by year until the

share of the cost of Fargo shall be paid, taking into consideration and reduced by other sources of revenue the city uses toward financing of such bridge or bridges.

"8) The original certification by the city as to the advertisement for bids shall contain the anticipated cost of the bridge to be derived from the provisions of 24–08–08 NDCC. Each year thereafter the City of Fargo shall certify to the County Auditor the remaining cost of such bridge or bridges to be paid from the provisions of 24–08–08 NDCC. This procedure is to give needed information to the county in making its budget and to prevent overpayment."

In examining the provisions of § 24–08–08, NDCC, it becomes apparent that it is not a self-sufficient law capable of operating on its own but must rely upon some other law to fully implement its provisions. Section 24–08–08 does not grant any powers to the county commissioners. The necessary grant of power, such as levying a tax or creating a bridge fund, obviously rests upon some other law.

To obtain the full and true meaning of the provisions of § 24–08–08, it is imperative that the background under which it was enacted be examined to determine if any pari materia laws existed at that time which will help in determining its true and full significance. With this in mind, we have reviewed and researched the various enactments which may have a bearing on the resolution of the issue under consideration particularly as to the interpretation and construction or validity of § 24–08–08, NDCC, as it now provides.

"24–08–08. *Bridge funds to be turned over to city.*—The county treasurer of each county wherein any city shall have constructed a bridge, or hereafter shall construct a bridge, over any navigable stream, shall pay to the auditor of such city whereby such bridge has been constructed or is about to be constructed, all money in the county treasury or which may come into the county treasury in the bridge fund of such county, which may

have been or which shall be levied, assessed, and collected from persons and property, or either, in said city." [Underscoring ours.]

Section 24–08–08 was enacted by Ch. 39 of the 1890 Sessions Laws, at which time a territorial law, Ch. 28, § 33 of the 1877 Code, was still in effect. It was found under the heading "Rate of Taxation and Levy of Same" and contained the headnote "Territorial, County and Special Taxes Limited," and provided:

"The rate of the general territorial tax shall not be less than one-half mill, nor more than five mills on the dollar valuation; for ordinary county revenue, including the support of the poor, not more than four mills on the dollar; for roads and bridges, a poll tax of one dollar and a half, or one day's work, on every male person between the ages of twenty-one and fifty years; a bridge tax not to exceed two mills on the dollar; and a road tax not exceeding two mills on the dollar valuation, to be paid in money or in labor at the rate of one dollar and fifty cents per day, at the option of the person so taxed, and the certificate that the person named therein has actually performed eight hours labor for each day's work so certified, shall be received by the county treasurer in discharge of said tax to the amount so certified. For county sinking fund, such rate as in the estimation of the board of county commissioners, will pay one year's interest on all the outstanding debt of the county, with fifteen per cent. on the principal." [Underscoring ours.]

This Territorial statute was adopted by the State as evidenced by the 1895 Code, where it became § 1217. Later it became § 2150 of the Compiled Laws of 1913. The "bridge tax" not to exceed two mills on the dollar remained the same until 1915, when it was amended by Ch. 111, and was raised to four mills on the dollar.

Chapter 111 of the 1915 Session Laws was repealed by Ch. 318 of the 1923 S.L., which enacted a new law limiting the combined levy for road and bridge purposes not to exceed two and one-half mills on the

dollar on the net taxable assessed valuation. The same Act also permitted the voters to authorize an excess levy by voting for it. Ch. 318 of the 1923 Session Laws was superseded by Ch. 235 of the 1929 S.L., leaving the levy limitation for road and bridge purposes at two and one-half mills on the dollar of the net taxable assessed valuation of the county.

Chapter 235 of the 1929 S.L., after having been amended and reenacted, is now found in the North Dakota Century Code as § 57–15–06(3), which currently provides as follows:

"County tax levies shall be limited as follows:

.   .   .   .   .

3. The twenty-mill limitation shall apply to all tax levies which the county is authorized to levy for general and special county purposes, including taxes levied for road and bridge purposes. Any unexpended balance in the county road fund at the end of the fiscal year may be transferred to a special road fund, except that such special fund shall never exceed the amount a ten-mill levy on the assessed valuation of the county would yield, and the balance in said fund shall not be considered in determining the budget or the amount that may be levied. Such mill limitation shall not apply;" [Underscoring ours.]

When the provisions of § 24–08–08, NDCC, were enacted in 1890, the bridge tax as found in the 1877 and 1895 Codes was in full force and effect. The reference to the bridge fund in § 24–08–08 had a clear and definite meaning. Nothing was left to be determined. The "bridge fund" referred to the bridge taxes collected. The law imposing the bridge tax not to exceed two mills, as found in Ch. 28, § 33, of the 1877 Code, and as it existed in 1890, was in pari materia with Ch. 39 of the 1890 Session Laws (now § 24–08–08) which provided for the disposition of the bridge fund. These two provisions of law supported each other and gave each a meaningful application. Significantly Ch. 39 of the 1890 Session Laws

[§ 24–08–08] did not impose a tax. It merely directed the disposition of the tax collected.

■ However, when Ch. 318 of the 1923 Session Laws was enacted, which eliminated the separate bridge tax and combined and limited the road and bridge tax to a levy of two and one-half mills, it in effect made what is now § 24–08–08 inoperative. This section could be made operative again if the Legislature were to impose a bridge tax and require it to be deposited in a bridge fund. With the enactment of Ch. 318 of the 1923 Session Laws, the bridge tax which supplied the money for the bridge fund no longer existed. Neither did any law direct or authorize the creation of a bridge fund separate from the road and bridge fund. None of the existing laws suggest that portions of the road and bridge fund should or may be used for bridges. This issue is left to the discretion of the county commissioners.

■ Generally, mandamus will not lie for the purpose of compelling officers to perform a discretionary act in a certain manner. *Oliver v. Wilson,* 8 N.D. 590, 80 N.W. 757 (1899); *State ex rel. Herbrandson v. Vesperman,* 52 N.D. 641, 204 N.W. 202 (1925); *State ex rel. Conrad v. Langer,* 68 N.D. 167, 277 N.W. 504 (1938); *Midland Produce Co. v. City of Minot,* 70 N.D. 156, 294 N.W. 192 (1940).

We also note that § 24–05–01, NDCC, which has its roots in Ch. 69 of the 1893 S.L., provides that counties in the state having a population of 2,000 or more shall levy and collect "a property tax of not less than one-fourth of one mill, nor more than the maximum rate permitted by law, on each dollar of the assessed valuation of all taxable property in the county for the improvement of highways."

As amended by Ch. 179 of the 1953 S.L., it also provided that 20% of the tax collected shall be turned over by the treasurer to the auditor of the city in the manner provided in § 11–13–06, NDCC, to be expended under the direction of the governing body of such division in the improvements of the

streets and highways thereof, and that the provisions of this section in regard to allocation shall apply to the proceeds of any tax originally levied for other purposes if appropriated or transferred to the county road fund or for expenditure for road and bridge purposes. However, § 24–05–02, NDCC, which stems from the same source, also provides that:

"The county road fund created by section 24–05–01 shall be expended only for road machinery and for grading, ditching, and surfacing, in proper form and condition for public travel, such highways or parts of highways, howsoever established, as constitute the principal thoroughfares of the county, communicating with shipping points and market places resorted to by inhabitants of the county, for which the means otherwise provided, in the opinion of the board of county commissioners, are not sufficient."

We note the fund may be used only for certain purposes and no mention is made that it may be used for bridges.

This section was considered in *Brusegaard v. Schroeder,* 201 N.W.2d 899 (N.D. 1972), in which the North Dakota Supreme Court said that the designation of the Pillsbury and Urban Renewal funds[1] as a special fund within the road and bridge fund for the purpose of erecting a new county equipment shop building was not so violative of the statutes as to restrict these funds to be expended only for road machinery and for grading, ditching, and surfacing highways or parts of highways as provided by § 24–05–02, NDCC. Significant, however, is that the court found it would have been a better procedure to have covered the Pillsbury fund and the Urban Renewal fund into a special building fund within the general fund. Thus the holding in *Brusegaard* is not indicative of the proposal here to use the funds generated under § 24–05–02 for bridge purposes. We recognize that the court in *Brusegaard* in effect said the action of the county commission was permissive under § 24–05–02, but we doubt that the court could have legally concluded that such action was compulsory so as to make it appropriate for a writ of mandamus. In addition, the *Brusegaard* case involved the creation of a special fund by the commissioners in the road and bridge fund which we do not have here.

Chapter 179 of the 1953 S.L., which amended § 24–0501, NDRC 1943, also repealed § 24–0618, NDRC 1943, which provided as follows:

"*Road Taxes To Be Paid to Local Subdivisions.* All road taxes collected as personal taxes from residents of any city, village, or civil township, and all road taxes collected on account of real or personal property situated within any city, village, or civil township by the county treasurer in which such city, village, or civil township is located, shall be turned over by such treasurer to the treasurer of such city, village, or civil township as provided in section 11–1306 to be expended under the direction of the governing body of such subdivision in the improvement of the streets, highways, or bridges thereof, or of the roads approaching thereto. This section shall not apply to road taxes levied for county road purposes."

This is compatible with § 175 of the North Dakota Constitution, which provides:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

We have also reviewed other somewhat related statutory provisions and amendments. It would serve no useful purpose to recite them in this opinion. We can, however, conclude that they militate in favor of our conclusion rather than against it, and do not support the writ of mandamus issued by the trial court.

We can also obtain some precedence from the case of *City of Grand Forks v. Grand Forks County,* 139 N.W.2d 242 (N.D.1965),

---

1. These funds obviously were derived from sources other than a levy under § 24–05–01, NDCC.

in which the court had under consideration several certified questions, including the question whether or not the taxes collected under § 24–08–08, NDCC, and placed in the bridge account, were required to be paid over to the city of Grand Forks, which was in the process of constructing a bridge over the Red River on Skidmore Avenue. The court recognized that the parties stipulated that the county had not theretofore maintained a bridge fund but that the cost of bridges and culverts had been paid by the county directly from its general fund. The court further observed that the stipulation did not state when this may have occurred and it did not know whether this practice was currently being carried on. The court then said that it could not determine from the stipulation of facts or the order certifying the questions if a levy was currently being made for bridge purposes or if there were any taxes being collected or outstanding under such levy. The court also observed that the stipulation specifically provided that the county had levied and collected tax moneys under §§ 24–05–01 and 57–15–06.3, NDCC, but no mention was made of any levy under Ch. 24–08, or otherwise, for bridge purposes. The court ultimately concluded that the facts necessary for a resolution of the certified questions had not been established by stipulation and therefore any answer to the question would be merely advisory, and as such the court declined to answer the question.

The facts needed to answer the issues, particularly Question No. 7,[2] namely whether or not a levy was made for bridge purposes under Ch. 24–08, is a clear indication of what the court thought was contemplated by § 24–08–08, NDCC, which does not include the construction placed upon it by the trial court.

Individually, the city and county each has only such authority as is granted to it or as is necessarily implied from the grant. They both derive their authority and power from the same source. Both are of equal standing and neither may impose its wishes upon the other without express constitutional or legislative authority. In this case no such authority has been presented and our research did not disclose any.

Under the present situation or position, if the city of Fargo were sustained it would be tantamount to saying that the county is subordinate to the city and that the city may dictate when the county must create and budget for a bridge fund. Not only that, but the city would dictate to a degree what shall constitute the budget for the bridge fund. A careful examination and analysis immediately discloses that under our form of government such authority was never contemplated except by specific legislation.

We are not expressing any thought as to whether or not the bridge or bridges are necessary or an item of practical convenience. Neither are we suggesting that the county should in no manner contribute to the construction of the bridges. We are, however, convinced that the procedure employed here was inappropriate.

In cases where more than one governmental body is involved in a subject matter or has an interest, the Legislature has enacted Ch. 54–40, NDCC, which basically provides that governmental bodies may do jointly what they are authorized to do separately, and then sets out the procedures to be followed to accomplish this.

A writ of mandamus may be used to compel the performance of an act which the law specially enjoins as a duty resulting

---

2. "Under Section 24–08–08 of North Dakota Century Code, can the City of Grand Forks claim one hundred per cent (100%) of taxes collected on account of real or personal property [collected on account of real or personal property] situated within the City of Grand Forks, being expended by the county for bridge purposes, but which funds are not handled through a so-called 'bridge fund' but being expended from the general fund; the funds sought by the City for the current construction of the Skidmore Avenue Bridge across the Red River, a navigable river?" *City of Grand Forks v. Grand Forks County*, 139 N.W.2d 242, 247 (N.D.).

from an office, trust or station. The applicant must show the existence of a legal right to the performance of the particular act sought to be compelled by the writ. *Fargo Education Association v. Paulsen,* 239 N.W.2d 842 (N.D.1976). This does not include a discretionary act of an official. The applicant must also establish that a plain, speedy and adequate remedy in the ordinary course of law is not available. Section 32–04–02, NDCC, and *Fargo Education Association v. Paulsen, supra.* In matters which are discretionary, mandamus does not lie. *First American Bank & Trust Company v. Ellwein,* 198 N.W.2d 84 (N.D.1972).

In the instant case, we have found no statute, and none was called to our attention, which either expressly or impliedly directs the county commissioners to perform the act commanded by the trial court in its writ of mandamus. Furthermore, there is a serious question whether or not the commissioners are authorized as a matter of law in any event to perform the act commanded by the writ. (Because of our conclusion we are not required to decide the question.)

At best, if the acts were permitted they would be clearly discretionary. However, in examining the court's command it becomes apparent that whatever discretion the commissioners could have exercised, if they could have done so in the first instance, was exercised by the court or by the city in its demand for the writ of mandamus.

For the reasons stated herein, we conclude the trial court inappropriately issued the writ of mandamus. The case is remanded with directions to vacate the writ of mandamus.

In reaching this conclusion we are not expressing any views that the county should not pay for any of the costs of the bridge. This is a matter of two equal governmental boards employing the appropriate statutes to accomplish a common objective for the benefit of both governmental bodies.

No costs shall be taxed to either party.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.